Case numbers 13-5423 and 13-5560, Dan Bennett and Karen Bennett v. CMH Homes Inc. Arguments not to exceed 15 minutes per side. Mr. Clements for the Appellant, Cross-Appelees. I please the Court, Kirk Clements for the Appellants, Dan and Karen Bennett, I would like to reserve 3 minutes for rebuttal. You may. This is our appeal from the United States District Court of the Middle District of Tennessee, specifically from Judge Kevin Sharpe's order of January 14, 2013. In our appeal, we addressed 8 issues, but this morning, subject to the Court's questions and approval, I'd like to address 3 of those issues that mainly center around damages. Mr. Marshall, could we address first where the federal jurisdiction in this case is? There's clearly no diversity. Although a diversity jurisdiction seems to be alleged as a basis for the case, I can't see that there is any diversity jurisdiction, and other than that, I don't understand where the federal question jurisdiction arises, if there is any. Well, Your Honor, there is the Federal Manufacturer's Warranty Act. What provision of that are you relying on as providing jurisdiction? One moment, Your Honor. Your Honor, it is the Magnuson-Moss Warranty Act, found in 15 U.S.C.A., Section 2301. What provision of it provides federal question jurisdiction in a case like this? Well, Your Honor, I apologize, I don't have the specific site, but essentially, it affords protection to consumers under the Warranty Act if the warranty fails, and that's what we're alleging here. But doesn't Magnuson-Moss talk about consumer products, which are defined basically as personal property? Are there any cases that say that a home, manufactured or otherwise, is a consumer product under Magnuson-Moss? Your Honor, I can't answer that question. I know under the U.C.C. that this manufactured home is defined as a good. Okay, but Magnuson-Moss doesn't talk about goods, and I know there's at least one case that specifically says a manufactured home is not a consumer product. I think this question needs to be briefed. There's nothing in these briefs that sets out, if you've got really a claim of diversity jurisdiction, you need to state how it is, because I can't find it. And also, we need a brief on where the jurisdiction is under federal question jurisdiction, if there is any. I don't believe there is any diversity, Your Honor. Both of the parties are from Tennessee. That was alleged by the plaintiff as being a basis for jurisdiction. If I did allege that, that was a mistake. That shouldn't have been alleged. My intent was to proceed under the Magnuson-Moss Act. Now, Matt, if there are a couple of other things, there is no summary of your argument as required by the rules of appeals, and I can't find where you've summarized what the district court did. I don't know what the district court did precisely here, because there, in looking through the district court did, but I see no summary anywhere. Yes, Your Honor. I tried to summarize at the beginning of each issue that I addressed, and as the court indicated, addressed the specific court's findings related to that issue. Okay. Could we, is it all right if we have a brief on the jurisdiction? Yes, because I was going to say, both sides, I mean, your opponent seemed to want to be in federal court also, but you can't confer jurisdiction by consent. But if both of you would, let's say 10 days, 10 pages, okay, as to why the court had jurisdiction and what are the consequences if it doesn't. But for the moment, at least, now that we've raised that, if you'd go ahead and give us your You said you had three damages points. Why don't you lay them out and then discuss them? Yes, Your Honor. The three issues I'd like to address, the first is whether or not the court's award of $35,200, which in effect was a refund for the price paid for the manufactured home, is supported by substantial evidence.  No, Your Honor. The amount paid to the defendant was $109,597.57. Now, that's independent of the, quote, $45,000 for the land and $10,000 for improvements that's in the sales contract? Correct, Your Honor. It doesn't quite come out, but let's say that that's what you got. They got that cash in hand, although directly not from you. They got it from the mortgage company, right? Correct. And that's primarily our issue, is that I believe that the damages statute 47-2-711 basically states What damages statute? It's under the UCC, under Tennessee law, Your Honor, 47-2-711, and it's titled Buyer's Remedies in General. That would be relying on diversity jurisdiction. Is that right? I mean, Magnuson Moss doesn't incorporate the UCC, as near as I can tell. No, Your Honor, but this would be a supplemental issue. Is it pendant jurisdiction? I'm sorry? Is it pendant jurisdiction? Yes, Your Honor. You want to take up the whole ball. You're claiming jurisdiction under the national standards. You have two allegations, and so you're going to get back with us and tell us how those two give you jurisdiction. Correct. And you wanted the court to take up everything else. Correct. All right, so you're under the 47-1-7-11, which your claim is that it gives you incidental and consequential damages. How do you calculate that? You've got the $109,000, and you're saying that you're owed $80,000 in interest. Is that not the interest that was paid on the full $160,000 that included both the old land mortgage and the land improvements? No, Your Honor. The amount that was paid to the defendant was the contract amount, which is the $109,000. The rest of it essentially was they took out a loan using their land, but the defendants received the amount for the cost of the home. But the $1,400 a month, that was the mortgage payment. Correct, to the mortgage payment. All right, so that included interest on the $160,000 because it included the full mortgage, which rolled in the old mortgage on the land and the $10,000 of land improvements. Yes. How did you calculate $80,000? Well, Your Honor, basically what we did was take the total amount of the loan, which I think was about $158,000, took the amount of the contract for the manufactured home, which is $109,000, and I basically used simple math. It came out to be 0.69%. So my client took the amount of interest that they've paid during this time, and we multiplied it by 6.9%, and it came out to be roughly $80,000. But isn't what you did, it's not the interest. I mean, let's not get deep into the math, but as I understood it, help me, 88 months times $1,400 was your total mortgage payment, right? Yes. Which comes to 120-some, and you apply your 69, and that's where you get the $80,000, so it's not just the interest. You're asking for the principal as well, if that's where the math comes from. Let me address it this way. We're asking for the amount that was paid to the defendant for the manufactured home, which was $109,000, $57,000. In addition, we're asking for the interest that was paid on the mortgage related solely to the home during the time they were in the home. Okay, let me ask you this. This is very complicated, but the mortgage problem doesn't move me because you might have gotten the money by cashing your IRA or by selling stock or taking it out of your checking account. The seller doesn't know that. But on the other hand, if you start with the 109 and they take the house, would you sort of be satisfied or would a proper theory be the 109 less the real value of what you got from living in it? You say the $1,000 a month is way too high and I may agree with you, but wouldn't the normal rescission damages be what you paid, the $109,000 cash in hand, less the value that you got plus prejudgment interest? Real prejudgment interest would kind of offset your mortgage payments to some extent. What would be wrong with that as a basis? Well, there would be a couple of things. One, it would depend on the amount of the prejudgment interest, which here I think they only got $3,200. I understand. I'm saying I'm dubious about that as well. I think we asked for $90,000 in prejudgment interest. So if it approached that $80,000, then yes, I think my clients would be entirely satisfied. But with regard to the offset, there's a couple problems with it. First of all, they never pled that in their answer. They didn't file a counterclaim. And at court, the only thing that was put into evidence was my client's testimony about an apartment in Murfreesboro, which is several miles away and is in a populated area. My clients live out in the country. You've got a big school there too. People rent lots of apartments for the school, don't they? There is a big school there. So we felt like we're submitting that that amount, $1,000 a month, was way too much, and something much less than that would be appropriate, although, again, we submit that they shouldn't get any credit because they didn't prove it at trial, they didn't plead it. However, what the court said I think is a reasonable resolution to this. How much was the mortgage? The mortgage payments or the complete mortgage amount? Mortgage. I believe it was $158,000 and some change. And the proceeds from that were spent paying for the house? Correct. Anything else was used for any other anything else besides paying for the house? Not related to this. Well, it paid off the old land mortgage, didn't it? That's the difference. That's the big chunk between the $160,000 and the $110,000, isn't it? I don't know what they did with the balance of the mortgage. It was $45,000. I mean, you should know it was your client's mortgage. I hope he got it paid off. I assume there's no settlement statement in the record, I take it. I never asked him that. Okay. That's probably accurate. Go ahead. What is still owed on the mortgage? I believe that it's like $140,000. It was a very high interest rate, 10% interest, I believe. They got it knocked down somewhat, but it's about $140,000. Why did the sales contract say $6.75? That was the other big one. I believe that was the initial contract. The one they ultimately signed, I believe, has a higher interest rate. And is that in the record? Yes, that is in the record. Do you have a citation? Is that the May one? That is the May contract. If you have a citation for that, I'd sure appreciate it. Okay, let me see here. If not, you can bring it up on rebuttal or send it in, but I'd like to be able to find that one. Yeah, I'd have to find that one. You don't know where all of the proceeds of the mortgage went, right? Honestly, Your Honor, I never asked them that question, but I assume that probably is accurate. They paid off the mortgage on the land, so there was only one lien holder. Aren't you trying to recover the amount of the mortgage? Not related to the land, no, Your Honor. That's the difference between the $110,000. You're only asking for $109,000 and $110,000, not for $160,000, right? Correct. Anything else? We agree that the mortgage is held by an independent third party, correct? Yes. And your assumption is that the $109,000 has already been paid to the defendants? It has been, yes, Your Honor. Okay, thank you. All right, thank you. Thank you. You'll have your three minutes for rebuttal. Good morning, Your Honors. Bill Rutschow of the Nashville Bar. I'm here on behalf of the appellee, CMH Holmes. The easiest way for me to get around all the math is to say that we do need to have federal jurisdiction to adjudicate these claims. Yes, you do. Now, there is no diversity jurisdiction. There is no diversity jurisdiction. That's what was alleged, one of the things, alleged in the complaint, right? That's correct. Okay, so you agree that that's out? I agree that that is out. Now, what is the provision? Do you think there is federal jurisdiction? I don't know. I have looked at some cases under MAGMOS that have gone both ways. We originally were happy with federal jurisdiction because we were making way back in the beginning of this case, we filed a motion to compel arbitration under the Federal Arbitration Act, and we were using. You're probably happier in federal court than in Rutherford County Court. Probably, at the end of the day. You're right. We certainly can't consent to subject matter jurisdiction, but we did not push that issue. We do have the law here, you know, and the law requires federal jurisdiction. Absolutely. It's up to both parties to assist the court in determining whether there is any such jurisdiction. Absolutely, and in looking at the cases that I looked at under MAGMOS, I reached a conclusion that while there were cases going both ways, that if we were going to tilt them one way or the other, they slightly tilted towards a MAGMOS claim covering a manufactured home and therefore giving jurisdiction. Nowhere in the court below was the question raised or briefed at all. It was not. The question was not briefed or raised below. With regard to the damages issue, again, I think the easiest way for me to answer that question is to avoid it, which is by saying that Judge Sharpe reaching a revocation remedy at all, which then leads to all of this crazy math, was error by Judge Sharpe below. Judge Sharpe recognized in his order that if there is an adequate damages remedy for a breach of contract or breach of warranty, then revocation should not be granted. He then, in ordering revocation, simply said damages aren't adequate. Never explained why. I thought he said that the damages remedy in the contract was unconscionable. He certainly said that, Your Honor, and let's take the damages, the limitation. I disagree with that ruling too, but for right now, take the limitation of remedies provision in the contract. If it's unconscionable, it's severed from the contract. There is a severability provision in the contract. At that point, all damages, all remedies are available. That would include the traditional damages remedies for a breach of contract or breach of warranty, which in this case would be the cost of repair or the diminution in value of the property due to the defect at the time of the transaction. That was never addressed. By either side, is that right? We took the position that those were— Because that would say damages should be $109,000 minus what this defective house is worth, so let's say $50,000. Correct. If there were some evidence as to that, did you put in any evidence to your claim of what the house was still worth? We did not put any evidence in of what we claimed the house was still worth, first of all. Right. We know that it was our obligation to do so. They didn't prove their claim. They put in any— There was testimony at trial, first from Mr. Baker, who was our corporate representative, as to the cost of repair of approximately $3,000. Secondarily, there were appraisals that we got through cross-examination of Mr. Bennett, appraisals of the home that appraised the home and the land. I think one was $140,000 and another was $160,000. When were those appraisals? Those appraisals were done a year or two after the home was placed on the property, so after the actual transaction. But they showed that at worst, home and land that had been worth $160,000, if you take what the mortgage was for at the beginning, was at worst worth $140,000 a year later, or at best was essentially worth the same. We all know the market was rising during exactly that period. Certainly. But so—well, actually, yeah. 05, 06. 05, 06, it was rising. 07. But our point would be is that that was the proper measure of damages. Revocation was an—because that was—the court never addressed that it wasn't appropriate. The idea of revocation here is rescission of the transaction. Correct. And that is normally thought of as an equitable or unjust enrichment or restitutionary remedy, right? Correct. Okay. So how is that supposed to work in this kind of case? I'm not sure it can because it's supposed to put the parties back in the status quo as if the transaction had never existed. Cases often talk about the fact that you can't give rescission if you're so far down the line that that, quite frankly, is impossible. And we think that at the time any revocation was attempted, we were too far. You can grant rescission as a remedy. Fraud would be one, I guess, right? Yes. But that is not the basis that was found here or was? It was not. In fact, the fraudulent misrepresentation claim was dismissed at summary judgment. What is the basis in restitution here for finding rescission as the proper remedy? Plaintiffs are traveling under the UCC, and the UCC section that provides for revocation, if the value of the good has been substantially impaired, then revocation can be an appropriate remedy. That's where they're traveling is under the UCC. There's nothing in the federal act that deals with this at all, so this is premised on the use of state law or diversity or something. Correct. Dependent jurisdiction. It is based on state law. Although if you're under Magnuson-Moss, if Judge Merritt's statement was correct, which I think it is, that Magnuson-Moss doesn't specifically tell you how to measure damages, then you would tend to look to normal, not necessarily the UCC specifically, but to normal contract law in which the correct statement which you had earlier was, if breach damages are insufficient, then you can have rescission. So it would bring you back to that. That's correct. Would that be fair? That is fair. Our position is... But 711 isn't the key to this ability to rescind notice of nonconformity? It is notice of nonconformity, failure to cure, and then a notice of actual revocation, which is a whole separate issue. It's our position there was never any notice of revocation. There was no actual revocation in this case. But that's a finding of fact by the judge who tried the case, correct? Certainly it is, and we believe it was clearly erroneous. The court based that on two things. One, the plaintiff's complaints about defects in the home, complaints in which they were asking for the home to be fixed. That's a punch list. That's not asking for the home to be taken back. We cite numerous cases in our brief that talk about the fact that that's not revocation. Those are inconsistent. Although if the fixes never get fixed, then where are you? If the repair doesn't get made... There still has to be an affirmative act by the buyer to revoke. And in this case we're saying there was no such affirmative act. The suit itself isn't adequate for that. Well, if the suit itself is adequate for that, we would say that is certainly untimely because by that point it was over a year after the suit was filed in December of 2008. It's the notice of nonconformity that kicks it off. Then under the case law, don't you have this period of time during which people are attempting to see whether the product itself can be made to conform? Certainly. And wasn't the decision of the district court here that the time period was allowed for your client to fix it and your client failed? That's correct, but that's not the trigger point for revocation. That's the trigger point for the breach. Notification of the nonconformity in this case and then a failure to cure under the warranty, that's evidence of the breach. If we adequately cure, we have not breached. If we don't cure... Are you saying that Tennessee law requires that you request rescission before you know if someone can make a product conforming? No. What I'm saying is that they have to make... If you get to that point, you've noticed the nonconformity, there is a failure to cure that nonconformity, then the buyer at that point has a claim for a breach of that warranty and can sue for damages. Or, in this case, if the damages cannot remedy their injury, they can rescind. But at that point, they have to make an affirmative act to rescind. What the court found in its findings of facts and conclusions was that the discussions between your client and the plaintiffs were discussions of your client purchasing the house back. Absolutely. So you take the position that those discussions are insufficient? That's correct, because they were not an affirmative act by the plaintiff to revoke. Those were settlement discussions, which are a completely different animal. And quite frankly, the district court put us between a rock and a hard place because at trial, I objected to these settlement discussions coming in under Rule 408, and Judge Sharp sustained my objection. And then relied on those same very discussions to determine that they had engaged in the affirmative act. Basically, what the court found was that by my client engaging in settlement discussions, one of the options that clearly included buying the house back, another option was to repair, a third option was to replace the existing house with a new house. By engaging in those discussions about settlement, that that was sufficient to qualify as revocation by the plaintiffs, even though it was the defendant that raised this issue as settlement discussions, which would have included the full panoply. Did the district court find that the house could not be made level, that it was, apparently the facts were that no one could figure out how to make it level. They tried a number of times, and people for the defendant said, well, this house will never work until it can be made level, and you can't make it level. So is that the basis really for the district court's action that you had to rescind? I would say no, because the court never said the house can't be leveled. The court found that we did not make it level, which is a far cry from whether or not somebody could make it level. Over how long a period? Over about a year to year and a half in terms of when it was first determined to be unlevel until the state closed its file, and understand that's another issue of ours, because the state determined in their last inspection, obviously highly disputed, but the state determined that it was, in fact, level. But if it wasn't level after those one or two years, it still wasn't level up until now? As far as we know, unless the plaintiffs have had somebody else come out and given them an estimate, and given them an estimate on how to level it, and in fact work was done by my client to level the house. It was dismissed by the district court, but understand that while it took a long time to figure out why it wasn't level, there was a clear expert report as to what could be done to level the house. Is the house still there now? As far as I know, the house is still there. You haven't taken it back. We have not taken it back because of this appeal. Let me ask you this about the prejudgment interest, because clearly we're into high finance here, but if you went more the way I was raising with your opposing counsel, that is you got $109,000, $110,000 cash in hand at the closing, right, from the mortgage company? That's correct. Well, it's actually more the purchase price of the house is around $101,000. Okay, we'll fuss with that in a minute. If you have rescission damages, which would be you have to give back the $109,000, and you're not going to give it back for seven, eight years, shouldn't there be prejudgment interest from that time up until judgment that you've had the use of that money? They're having to pay the mortgage, and I don't personally, as one judge, I don't think they're entitled to the interest on it, but on the other hand, the equivalent is you've got the $109,000, so why wouldn't prejudgment interest be appropriate at an appropriate financial rate? I think there's two parts to the answer. The first one is that the way the UCC has written it is the purchase price that has been paid, not the purchase price that's been received. So I think you look at it from the buyer's perspective, and what is the buyer out? The buyer is out the obligation. That's what I said to him. I don't think it matters where he got the money. I don't think it matters whether it's a mortgage or his IRA. That's his money. That's his obligation. So he has paid you the $109,000 wherever he got it from. But it goes back to what he has hit. First of all, it's not what they requested. They didn't request the entire obligation back, and so from that perspective, I think what the court was trying to do was find a middle ground between what it found to be a clearly excessive prejudgment interest under Tennessee law and their request for it at that maximum rate. Although he could have, that's why I said a financial, isn't it up to 10%? If he says the real price of money is 5%, he could have awarded full interest but just said 5% is the right rate. He certainly could have done that, also understanding that he would have had to apply, as we argued, an appropriate amount for the fair and reasonable use value. No, I said that to your colleague, but we have a whole separate question. I say my two colleagues live within a few miles of this house, so they may have. Okay, I think you're time. Sure, go ahead. CMH Homes is headquartered where? Merrillville, Tennessee. And they're still selling manufactured homes. They are still selling manufactured homes. Okay, so they're still in business and they're going concern. That is correct. But Love's Home is not. Love Homes was a DBA of CMH Homes, so I'm not sure that Love Homes ever existed as a separate legal corporate entity. One more question. The $80,000 in interest claim, is it your understanding that that relates only to the $100,000 or $109,000 value of the home? No, it was my understanding that that was all of the interest that had been paid to date under the mortgage, which would be the home and the land. Anything else? Thank you, counsel. You have your three minutes for rebuttal. Rebuttal. The purchase contract is found at Exhibit 4 of the appendix. However, I was looking at that exhibit and it doesn't cite the interest, and I can't recall if that was testified to at trial. Exhibit 4 of the appendix is the closing document? That is correct. Okay, we'll look it up. Thank you, counsel. Go ahead. I wanted to address this issue of revocation. And it is tantamount to a rescission, but the standard is not the same. And I think the court has already recounted what the standard is. And one of the things we haven't addressed here this morning is that the home was installed by unlicensed installers. And under Tennessee law, my clients can't even live there now at this point. So revocation is the – Because it's not livable? Well, no, because it was not installed by a licensed installer, or really technically a certified installer. Does that mean there's a certificate of occupancy that's invalid or something? I mean, they did live there for five more years. They've been living there for eight years, actually. Squatters, you're saying. No, Your Honor. But, I mean, if we're following the law, technically they're not supposed to live there. So revocation is really the only remedy, unless there were somehow to reinstall it. Where are your clients now living? They live in the home that we're here for today. Oh, they never did? Yes, Your Honor. Because you talked about storage expenses and other expenses. They never did do that? No, they have not moved out. It's a hypothetical. Yes, Your Honor. If they were to move. Okay. So they're still there? They are still there, yes. But they're not paying anybody anything for that. In light of the lawsuit, everybody just sort of let them stay there. No, they are paying their mortgage. Because the mortgage is to somebody else. Yeah, it's to Vanderbilt Mortgage. So they're still paying to live there. And, of course, the second reason we feel that revocation is appropriate is that they had years to fix this problem. And, actually, the home being unlevel was not found until September of 2006 when the state, or it was October of 2006, when the state did the first inspection. My client was told, and this was put into evidence, that the defendant was going to send in their best man to level the home. He came in. He did whatever he was going to do. The state came back out in February of 2007, and the home was still not level. And it was that point that the proof of trial showed the parties started talking about what to do, how to handle this. And the problem with the affirmative act of revocation here is that we're dealing with it is a manufactured home, but it's not something they can just haul off and put on Love Home's lot, which doesn't exist anymore. So the only thing they could do was contact the defendant and say, fix this. When they couldn't fix it, they asked them to please take it back. Did you originally file this case in state court? No, Your Honor, we didn't. We had a discussion, actually, and we determined, or they said they were going to file a removal if I filed it in state court. So I filed it in federal court. They did file a motion to dismiss for lack of jurisdiction, but that was overruled. And essentially dropped, didn't they? I mean, they said that they weren't pressing that point. Not after that motion, no. They did not. All right. If you'll have a seat for a second then. Thank you. You're finished. First, speaking for the court now. No, sir. You too. Speaking for the court, we've said that we want briefs on jurisdiction within 10 days, not more than 10 pages, possibly including what happens if we don't have jurisdiction. Speaking now only for myself, you've spent a lot of money litigating. If we decide we don't have jurisdiction, you're going to spend a lot more money litigating. Clearly this judge is concerned about a lot of issues, including the adequacy of damages. So Judge Sharp below said you might want to consider settlement. I know you've had some discussions. For one judge, I would reiterate that possibility. Any chance of settling the case? We've had lengthy discussions about it. I think three mediations, four mediations. We couldn't get it done at this point. Well, not four mediations before you had the concerns expressed by this panel about both jurisdiction and inadequacy of damages. So you may want to take this up again. And if you don't settle, you'll have to file those briefs. If you do settle, you may not have to file those briefs. All right, counsel. Thank you very much. The case will be submitted. Clerk may call the next case.